MERCANTILE-COMMERCE BANK & TRUST COMPANY, a Corporation, as Trustee, Plaintiff-Appellant, v. MID-CITY REALTY COMPANY, a Corporation, and ALBERT M. KELLER, WALTER C. HAEUSSLER, FRED J. HOFFMEISTER and FOREST P. TRALLES, as the Last Board of Directors and Statutory Trustees of the assets of SHUBERT-RIALTO BUILDING COMPANY, a dissolved Corporation, Defendants-Respondents.—156 S. W. (2d) 730.

Division One, December 12, 1941.

*Thompson, Mitchell; Thompson & Young* and *R. Forder Buckley* for appellant.

1008

*Boyle & Priest, G. T. Priest* and *Robt. E. Moloney* for respondent.

1010

DALTON, C.—This is an action in equity to foreclose the lien of a deed of trust, to secure an accounting for rents and profits

and for general equitable relief. In accordance with the answer of defendant, Mid-City Realty Company (hereinafter referred to as Mid-City), the court found that plaintiff had no right, title or interest in the described premises, and no right to possession, rents or profits therefrom; and that Mid-City was at all times lawfully in possession under a lease; but the court entered a money judgment in favor of plaintiff and against the other defendants for $145,417.24 principal and interest on obligations secured by the deed of trust. Plaintiff has appealed.

The suit was instituted in 1934, but was tried in 1940 upon a third amended petition. The deed of trust sought to be foreclosed is dated March 1, 1926, and was executed by the Shubert-Rialto Building Company (hereinafter referred to as Building Company). The deed of trust covered a certain leasehold estate on real estate on Grand Avenue in the City of St. Louis, together with the theatre building thereon, "and all other buildings now standing or at any time hereafter to be constructed or placed upon said (described) parcels of land, and all improvements and appurtenances thereto belonging, including all engines, boilers and machinery, heating and lighting apparatus, elevators, pipes and their connections used in or in connection with the buildings now on or that may be placed thereon during the continuance of this deed of trust; including all scenery, curtains, properties, equipment, machinery and appliances now or hereafter, and during the term of this lease, placed in said theatre building by the Grantor, and used in connection with the operation thereof, including also, all and singular, the tenements, hereditaments and appurtenances belonging to or in anywise appertaining to said premises, and all rights of whatever nature accruing to the Grantor under any easements . . .; also all the benefits and rentals accruing . . . under a certain sublease . . ."

The conveyance purported to be subject to (1) a lease (referred to as the Bauman lease) from the owner of the premises to Mid-City, (2) a sublease from Mid-City to the Grand-Rialto Theatre Company (the sublessee is hereinafter referred to as Theatre Company), (3) a subsequent agreement, conveyance and amendment of the sublease (referred to as the amendment) between the same parties (Mid-City and Theatre Company), and (4) an assignment, transfer and conveyance of all rights by the Theatre Company to the Building [732] Company, the grantor in the deed of trust. The Federal Commerce Trust Company was named as trustee in the deed of trust and the instrument purported to secure the payment of $200,000 of "Leasehold Six Per Cent (6%) Gold Notes and Coupons" therein described. The named trustee subsequently resigned and the plaintiff was appointed successor trustee. Plaintiff filed its acceptance and, thereupon, received a transfer from the original trustee of all rights under the deed of trust.

The deed of trust was not accompanied by any itemized list or inventory of personal property intended to be included under its terms. It did, however, provide that, in the event of default, the trustee should take possession of the mortgaged property, and proceed to collect the rents and profits, declare all outstanding notes secured by the deed of trust to be due and payable, and sell the property, or proceed at law or in equity to discharge the powers granted. Subsequent to the institution of this suit the Building Company, the grantor in the deed of trust, forfeited its charter on January 1, 1935, and its last board of directors and statutory trustees were made defendants in this cause.

The Bauman lease, supra, dated October 15, 1907, and providing for a term of 99 years, describes real estate located at the southeast corner of the intersection of Grand Avenue and Olive Street in the City of St. Louis, fronting 147 ½ feet on Grand Avenue and 160 on Olive Street. The rent provided for increased from a smaller initial sum until, after the first ten years, the rent was fixed at $16,500 per year. The lessee was required to pay all rents, taxes and special assessments, and, within fifteen years from the date of the lease, to erect a "new and substantial building at a cost of not less than One Hundred and Fifty Thousand Dollars." The lease stated that the building should belong to the lessor "at the end of the said term of ninety-nine years herein provided for, or at the termination of this lease for any cause whatever."

It is admitted that the theatre building, supra (including a five story office building with 50-55 offices), was built to comply with the terms of the Bauman lease, and at a cost of $150,000. The lease provided for insurance on the existing buildings, and later upon the new building, and fixed the amount at 50% of its cost, if fireproof, and 80% if not of fireproof construction. It provided for the use of the insurance for repairing or rebuilding in event of loss or damage "and that such repairing or rebuilding . . . be repeated by the party of the second part herein as often as the buildings now standing or hereafter erected upon the property hereinabove described are damaged or destroyed by fire or wind, and insurance necessary for such repair or rebuilding shall be constantly kept in force by the party of the second part in amounts and in character as hereinabove set out." The lease provided that "the said party of the second part shall and will take good care of the premises hereby leased, and the buildings now thereon or hereafter to be erected thereon," and, also, provided for forfeiture in event of failure "to pay any rent, taxes, charges, assessments, insurance or other payments," and that "the party of the second part shall and will at the termination of this lease, whether by limitation or otherwise, quit, deliver up and surrender possession of said premises and of all buildings and improvements thereon to the said party of the first part."

The Mid-City lease to the Theatre Company (really a sublease) is dated January 9, 1920, and covers a part of the south 75 feet of the property described in the Bauman lease, with the building and improvements thereon, and designated a period, expiring one day earlier than the Bauman lease, to-wit, October 13, 2006. The rent was fixed at $8000 per year, and the lease contained other provisions somewhat similar to the Bauman lease, supra, which lease was referred to therein. The lease expressly provided for forfeiture for failure "to pay any rent, taxes, charges, assessments or other payments," upon expiration of 60 days notice, and, in event of forfeiture, for the lessor to "reenter upon and take possession of the premises hereby demised with all and singular the buildings and improvements thereon." The lease further provided, as follows: "And that the party of the second part shall and will at the termination of this lease, whether by limitation or otherwise, quit, deliver up and surrender possession of said premises and of all buildings and improvements thereon to the said party of the first part and in case of the termination of this lease by expiration or limitation or otherwise said party of the first part may forthwith take possession of the said premises herein described and of all buildings thereon and improvements hereafter erected ▆▆▆ thereon, and the party of the second part further agrees that in the event of any termination of this lease that all tenants holding, by, through or under it shall and will atorn to said party of the first part."

The amendment of the sublease is dated January 26, 1920, and purports to be an "agreement," and "supplementary to and amendatory of" the lease dated January 9, 1920. It recites that "it was intended by the parties hereto in and by the terms of said lease that the lessor therein should convey, sell, transfer and assign to the lessee therein all of the right, title and interest of the lessor in and to the building and improvements situate on the land described and demised . . . and that the rental of Eight thousand dollars ($8,000) in said lease specified, should be paid by the lessee to the lessor therein, as ground rent for the land therein described, all as hereinafter set forth." It further recites that "the parties hereto are desirous of interpreting and amending certain other provisions contained in said lease in manner and as hereinafter set forth," and then states:

"1. That the Mid-City Realty Company in and by said lease has conveyed, sold, assigned and transferred and does hereby convey, sell, assign and transfer unto the Grand-Rialto Theatres Company, its successors and assigns, all of its right, title and interest in and to the building and improvements and above described fixtures situate on the following parcel of land, lying and being situate in the City of St. Louis . . . subject and subordinate, however, to (1) the terms, provisions and conditions of that certain lease between the parties hereto dated January 9, 1920, above described as hereby

amended; (2) the terms, provisions and conditions of that certain lease dated October 15, 1907 between Louis H. Bauman and Mid-City Realty Company. . . .

"2. That the rental of Eight thousand dollars ($8,000) per annum provided to be paid in the lease between the parties hereto dated January 9, 1920, shall be considered and paid as ground rental only, and that no additional rental shall be paid by the lessee for any improvements on said land. . . .

"It is further agreed that all provisions contained in said lease not in conflict herewith shall be and remain in full force and effect and be binding on the said parties, their respective successors and assigns." The amendment further fixed certain insurance and reconstruction provisions of the sublease to accord with the provisions of the Bauman lease.

On April 5, 1926, by an instrument dated February 26, 1926, the Theatres Company for a recited consideration of $1 sold to the Building Company its leasehold estate "together with all the buildings and improvements thereon, and with such fixtures as are by law made a part of said real property." This transfer recites that the leasehold estate consists of the unexpired part of the leasehold estate under a lease from Mid-City dated January 9, 1920 "as amended by an agreement between the said lessor and lessee, dated January 26, 1920," and is "subject and subordinate to" the Bauman lease of October 15, 1907.

On the same date, April 5, 1926, the Theatres Company executed a bill of sale to the Building Company, by which it sold and transferred to the Building Company "all its furniture, fixtures, scenery, paraphernalia, movable and personal property belonging to said party of the first part, and used and situate in its Theatre Building, on Grand Avenue, all of which personal property is now and has been since October 25, 1925, in the actual possession of said party of the second part, occupying and using same, and said Theatre Building, under written contract of sale to it." No itemized list accompanied the transfer. The actual consideration for the two instruments, supra, dated April 5, 1926, was the payment of $315,000 in cash. The instruments were separately made because of an income tax situation, but they represented a single transaction.

We have noted, supra, that the deed of trust by the Building Company to the trustee for the bondholders is dated March 1, 1926, and prior to the actual execution of either the transfer of the leasehold estate or the execution of the bill of sale mentioned supra.

Thereafter, the general property taxes for the year 1932 on the subleased premises were not paid, the installments of rent due July 1, and October 1, 1933, were not paid, and, on October 20, 1933, the Mid-City company, in writing, notified the various interested parties that said defaults had occurred, and that, unless said defaults were

made good, the Mid-City would, after the expiration of sixty days, declare said sublease to the Theatres Company forfeited and void, and would re-enter and ▮▮▮▮ repossess the demised premises, together with all improvements thereon, "free of all claims of all persons claiming by, through or under" the Theatres Company, its successors and assigns. On receipt of this notice plaintiff, on December 16, 1933, advised Mid-City that by the amendment of January 26, 1920, it had conveyed its entire title to the building and improvements; that the rentals reserved were ground rentals only; and that, upon forfeiture of the sublease, the building and improvements would remain subject to the lien of plaintiff's deed of trust. However, disregarding this notice, the Mid-City, on December 20, 1933, insisting that the defaults had not been made good, took possession of the building and premises and has since remained in possession, collecting the rents. Plaintiff's evidence indicated that Mid-City had collected approximately $120,000 in gross rentals since the date of repossession.

On May 23, 1934, plaintiff, as successor trustee under the deed of trust, notified the Building Company, its grantor, that defaults had occurred in the deed of trust by failure to pay taxes, ground rent and certain interest coupons, on demand, and that it declared the principal of all notes, secured by said deed of trust and outstanding, to be due and payable immediately. The evidence showed the amount due at the date of the trial was $95,000 principal and $51,456.12 interest, a total of $146,456.12.

On June 30, 1934, plaintiff notified defendant Mid-City of the defaults under the Building Company's deed of trust, and demanded possession of the building and property contained therein and used in connection therewith, and demanded the rents and profits therefrom, and further stated: "The said deed of trust provides that the trustee shall have the right, in the event of default, to take possession of the mortgaged property and collect the rents and profits. We are advised that you have forfeited the ground lease held by Shubert-Rialto Building Company, and have taken possession of the aforesaid building and other property in connection therewith. As we construe the instruments under which Shubert-Rialto Building Company acquired title, and particularly the agreement of January 26, 1920, between you and Grand-Rialto Theatres Company, supplementing and amending the lease or sublease dated January 9, 1920, the theatre building and other property used in connection therewith, in spite of the forfeiture of the ground lease, still remains the property of the Shubert-Rialto Building Company, subject to the rights of the trustee under the aforesaid deed of trust." On July 3, 1934, Mid-City refused to recognize any rights of plaintiff in and to the property referred to, or to rents or income, and it is admitted that the plaintiff never obtained possession of the premises or any part thereof.

Plaintiff's position is that by reason of the agreement of January 26, 1920, supplemental to and amendatory of the sublease of January 9, 1920, the sublease ''became solely a ground lease, and all right, title and interest in said building, together with the fixtures, became the property of the Grand-Rialto Theatres Company, wholly separate and apart from the terms and provisions of said (sub) lease, and subject only to the rights of the lessor in the aforesaid lease of Louis H. Bauman''; that the amendment of January 26, 1920 ''severed the building from the ground, and an implied easement of subjacent support was created for the building, giving the building the right to remain, without rent or charge, upon the ground under it, until the expiration of the 99 year Bauman lease''; . . . ''that the said deed of trust is a first lien upon all of the mortgaged property, other than the leasehold estate, which has been forfeited by defendant, Mid-City Realty Company'' for nonpayment of rent and taxes; and that ''a long and intricate accounting will be necessary to segregate and aportion to the property covered by the deed of trust, items of income or expenses properly applicable to the building or other property covered by said deed of trust.''

Although admitting that the sublease by Mid-City dated January 9, 1920, provided for forfeiture, in the event defaults were not made good within 60 days, and for the right to re-enter upon said premises and to repossess the same, together with all improvements thereon, in the event of such forfeiture, plaintiff contends that said provisions of said sublease, insofar as they were applicable to the building and improvements, were canceled and eliminated by the supplemental agreement (amendment) of January 26, 1920. Plaintiff says that ''all provisions for forfeiture of the building for nonpayment of rent and taxes, which would apply to a lease on ground and building, have no application whatsoever as to the building when the lease has been changed to a lease on the ground only and the building has been conveyed, sold, assigned and transferred'' by the amendment of January 26, 1920.

 The first group of assignments of error turn upon a construction of the sublease and amendment. The sublease and amendment were of record and were incorporated by reference in the deed of trust. Plaintiff (appellant) concedes its rights are subject thereto. It is admitted that the sublease, as amended, was forfeited, but plaintiff says that, as amended, the sublease was only ''a ground lease on the ground under the building''; and ''that while all the rights in the ground, until the year 2006, are unquestionably in defendant Mid-City Realty Company,'' the building (by the amendment) ''became and still is subject to the deed of trust and subject to foreclosure.'' It is suggested that Mid-City's right to the ground under the building may be used for ''underground bank vaults, bowling alleys or restaurants.'' Plaintiff says the legal effect of the

amendment "is that said Shubert-Rialto Theatres Building was granted, by implication, an easement to remain upon the subjacent ground, rent free, until the year 2006"; and that although "the Mid-City Realty Company still has the right to use the ground, subject to the easement of the building," . . . "the building and its contents are lifted out of the lease and conveyed, subject only to the terms of the 99 year Bauman lease." Plaintiff says the amendment *severed* the theatre building from the lease "and conveyed it separate and apart from the ground," and that no ground rent or taxes are chargeable against the theatre building. On this basis to-wit, rent free and tax free, plaintiff's evidence indicates the building has a value of $96,432. Plaintiff "admits no liability whatsoever to pay rent or taxes" and says the forfeiture of the sublease, as amended, did not effect the lien of its deed of trust upon the building and contents, or interfere with its right to possession of the building and to foreclose the deed of trust in this proceeding.

Plaintiff argues that a forfeiture of the sublease, as amended, did not entitle Mid-City to repossess the building or effect the sublessee's right to maintain the building upon the land without payment of rent, taxes or insurance. In other words, it is plaintiff's contention that immediately upon the execution of the amendment, the sublessee could quit paying rent and taxes, permit the sublease to be forfeited and the sublessee would still own the building, have the right to maintain it upon the land and use and possess it, until the year 2006, without paying the ground rent, or taxes or performing any of the obligations imposed by the sublease. Plaintiff says that if the rents and taxes were paid for 6 years after the amendment was made, it was only because of the contract obligations imposed upon the Building Company by the sublease. Plaintiff states that the building was conveyed subject to the sublease, *as amended*; that the rent is *ground rent* only; that only provisions of the sublease *not in conflict* with the amendment remained in force; and that, if Mid-City's interpretation is correct, the sale and transfer of the building to the sublessee was a nullity. On the basis of this argument, plaintiff says the sale of the building under the terms of the amendment gave a rent free, tax free, lease free right and "implied easement of subjacent support" for the building.

We cannot agree to such an interpretation of the plain words of the sublease and amendment. We think the sublease and amendment must be read together. The amendment refers to the sublease, interprets and amends it. It does not purport to supersede the sublease, or amend all of its provisions. It says that the parties intended by the sublease to sell and transfer the building and limit the rent to ground rent for the land. It amends "certain other provisions," and then states that "all provisions contained in the lease not in conflict herewith shall be and remain in full force and effect."

1018

Plaintiff contends there could be no forfeiture and repossession of the building under the terms of the sublease, because such provisions of the sublease were canceled by the amendment. We cannot agree. We find no conflict between any provision of the amendment and the provisions of the original sublease with reference to repossessing the premises and improvements in event of forfeiture or other termination of the sublease. These provisions of the sublease were not amended, canceled or superseded by the amendment. The amendment says that both of the matters mentioned, the sale of the building and the rents, as ground rents, were intended by the original sublease, prior to the amendment, and this original sublease provided for forfeiture and repossession of the building in the event of nonpayment of rent, taxes and insurance. The amendment in said respects only claims to express the original intention of the parties and there is nothing in the amendment which canceled or nullified provisions of the sublease for forfeiture and repossession of the premises and all buildings thereon. It is admitted that the same instruments, which conveyed the building to the sublessee, reserved the ground rents, and it is difficult to understand plaintiff's position that the payment of these rents was intended for ground rent only, independent of the fact that the building rested upon it. Why was the lessee agreeing to pay $8,000 per year as ground rent for land, if the lessee owned the building independent of the leasehold estate on the ground and if the building could be possessed and used without the rent being paid? What use could the lessee make of the land independent of the right of the building to rest thereon? Why, after the conveyance of the building, was the sublessee agreeing to pay the rents and paying them, if the rents were not connected with the building or the right to maintain and occupy and use it upon the land covered by the lease? Plaintiff's theory amounts to an immediate nullification of the sublease, as explained by the parties in the amendment, and makes the payments of the rentals and all compliance with the terms of the sublease a mere contractual obligation of the Building Company.

The amendment says that it was intended by the original sublease to transfer the building and limit the rent to ground rent and, if that be true, we may assume that the value of the building was not considered in fixing rentals. One of plaintiff's witnesses testified that the "net" income to Mid-City from the consideration paid for the "sale of the leasehold estate" was $33,000. In any case, the rent on the whole tract, mentioned in the Bauman lease, was $16,500 per year and approximately one-half of real estate described therein was subleased to the Theatres Company for $8,000 per year. There was no appreciable increase in the rentals reserved, although a building costing $150,000 had been built (about 1910) by Mid-City upon the part of the tract so subleased. We think that these circumstances were consistent with the fact that Mid-City had quitclaimed its

interest in the building and that no rent was being reserved on the building for the remainder of the term to the year 2006. Giving effect, therefore, to the plain terms of the amendment does not result in a determination that it is a nullity. The ownership of the building, however, remained subject to the Bauman lease and to the sublease, as amended, and as amended the sublease still contained provisions for forfeiture and for repossession of the building.

In addition, we think it apparent from a reading of the Bauman lease that the $150,000 building to be erected upon the leased premises was intended to remain a permanent part of such real estate; and that provision was made for the maintenance thereof until the termination of the lease. The fact that the lease expressly provided that the building should "belong to said party of the first part herein (Bauman) at the end of said term of ninety-nine years herein provided for, or the termination of this lease for any cause whatever," did not exclude the lessor's interest in the building the instant it was erected in compliance with the terms of the lease, or his right to require its maintenance · upon, and prevent its removal from, the described premises. [See: Buhlinger v. United Firemen's Insurance Company of Philadelphia (Mo. App.), 16 S. W. (2d) 699, 701.] Any attempt to transfer the building separate and apart from the ground upon which it stood was subject to prior instruments of record affecting the ownership of the building. Plaintiff's rights were and are subject to such instruments. [Rodier v. Kline's, Inc., 226 Mo. App. 474, 478, 47 S. W. (2d) 230.] The Bauman lease, the Mid-City lease (sublease) and amendment were of record prior to the execution of the deed of trust. All rights of plaintiff in and to the theatre building under the terms of the deed of trust were subject to the payment of the ground rent and taxes under the sublease and amendment for the use of the premises upon which the building rested. The right of re-entry for nonpayment of rent, taxes, and insurance was expressly reserved and such right of re-entry and repossession of the building and premises was not released or surrendered by the execution of the amendment. Mid-City's right to repossess the real estate included a right to repossess the building which was a part of the real estate. We find no uncertainty or ambiguity in terms of the sublease and amendment. The plain terms of these instruments must be given effect.

It should be noted further that the deed of trust, under which plaintiff claims, provides that the grantor "will promptly pay all ground rent," "will not do or permit anything to be done, the doing of which, or omit or refrain from doing anything, the omission of which, will be a ground for declaring a forfeiture of said respective Ground Leases" and "will pay or cause to be paid all taxes . . . which lessees are required to pay under said respective Ground Leases." It further provides, "In case the grantor shall fail

. . . to pay the taxes, ground rent, or insurance . . . the trustees . . . are hereby authorized to pay such taxes, ground rent," et cetera.

Plaintiff now says the payment of these items were only for the protection of the ground lease (which it says was a part of the security, but concedes to have been forfeited) and not for the protection of the title or security in the building. Plaintiff claims the building was owned by the Building Company independent of the sublease, because it "had been conveyed and lifted out of the lease." Plaintiff says the only security it lost by the forfeiture was the ground lease and not the right to the building, or its lien thereon. We cannot agree.

In support of its theory, plaintiff cites cases holding that the owner of the property may divide it horizontally or vertically or carve out and convey particular estates or interest therein. We concede the rule, but it is inapplicable here in view of the plain terms of the instruments in evidence. While it is true that wherever possible a contract will be construed so as not to provide for a forfeiture, in this case, there is no reasonable escape from such a construction. If the result seems harsh, it may be said that plaintiff had full opportunity to avoid the forfeiture. Although duly notified by Mid-City of the defaults in payment of rent and taxes by the Theatres Company (sublessee), the plaintiff failed to make them good, within the 60 day period, and Mid-City declared the lease forfeited and peaceably re-entered upon and took possession of the premises and of all buildings and improvements thereon.

Error is assigned upon the court's finding that "the defendant Mid-City Realty Company did not and does not have in its possession or under its control any property as described or claimed in plaintiff's third amended petition to which plaintiff had title or against which it had a lien of any kind or character or to which it was or is now entitled to possession."

Plaintiff contends that "there were in the . . . theatre building at the time of the trial certain personal property and trade fixtures subject to plaintiff's deed of trust as to which . . . plaintiff was entitled to have a foreclosure sale." Plaintiff refers to its evidence tending to show that, at the time Mid-City repossessed the building and premises, in December 1933, certain personal property was found in the building, to-wit, desks, chairs, carpets, vases, mirrors, a piano, a safe, seats, ticket racks and other items. Some of this property was shown to have been in the building about one year before the trial. Plaintiff insists that the court should have decreed a foreclosure of these items.

We have seen that the deed of trust contained no itemized list or description of any personal property, other than all property "used in or in connection with the buildings now on or that may be placed

thereon during the continuance of this deed of trust, including all scenery, curtains, properties, equipment, machinery and appliances then or thereafter, . . . placed in said theatre building by said Shubert-Rialto Building Company and used in connection with the operation thereof.'' The petition contains no more detailed description of the property upon which plaintiff seeks to foreclose its lien. Plaintiff did not have any such property in its possession, and there is no specifically described or itemized list of personal property, alleged to be owned by the Building Company, and subject to plaintiff's lien, or which was alleged to be in Mid-City's possession. By its answer Mid-City alleged that it was "without knowledge or information that at the time it took possession of said building, there was any personal property in said building *owned* by the Shubert-Rialto Building Company, and upon which plaintiff has a lien as alleged by its third amended petition.''

Except as may be inferred from recitals in the written instruments, set out supra, there was no evidence concerning the actual possession and occupancy of the ▮▮▮ building at the date of the deed of trust or at the date of forfeiture of the sublease, as amended. One witness said the building was surrendered to Mid-City by the Building Company, but he did not know whether the Theatres Company or Building Company was in possession. Mid-City's answer alleged it repossessed the building without objection of the Theatres Company. According to a recital in the deed of trust, "the premises and improvements thereon above described" were at the date of the deed of trust subject to a sublease to the Shubert-Rialto Theatres Company dated October 30, 1925, for a 15-year period, and this sublease was assigned to the trustee. Plaintiff, in argument, says this sublease covered only "the theatre portion of the premises and not the office building which was occupied by tenants" of the Building Company. Except as may be inferred from recitals in the said written instruments, supra, there was no evidence that the Building Company ever owned or possessed any personal property within the descriptions mentioned in the deed of trust and petition and there was no other evidence as to the extent or character of such personal property, if any, *owned* by the Building Company, and located in the building. The transfer by the Theatre Company to the Building Company of *all* of *its* property and fixtures in the building was not very satisfactory evidence that *any* specific personal property was acquired by the Building Company and left in the building. The evidence did not show that Mid-City was now or had been in possession of any specific personal property which was shown to *belong* to the Building Company or to be subject to plaintiff's lien. There was no showing that any of the personal property, found in the building at the time it was repossessed by Mid-City, was ever *owned* by the Building Company or was subject to the terms of plaintiff's deed of trust, unless such fact

be inferred as above stated. The mere fact that certain personal property was found in the building, when defendant Mid-City took possession of the building, considered together with all other evidence in the record, was insufficient to prove (to the trial court's satisfaction or to our satisfaction) that such property was owned by the Building Company or that the property was subject to the lien of plaintiff's deed of trust. Plaintiff merely assumes that any personal property or trade fixtures found in the building at the time it was repossessed by Mid-City in 1933 necessarily belonged to the Building Company, or was *placed* therein by said company, and was subject to lien of the deed of trust, but plaintiff offered no satisfactory proof thereof. The assignment is overruled.

Error is assigned on the action of the court in failing to require defendant Mid-City to account for all rents and profits from the building and its contents from January, 1934, to the date of trial, and including the proceeds of certain theatre seats found in the building and sold by defendant Mid-City. There was no satisfactory evidence that the particular seats were ever owned by the Building Company and neither was there any showing that any of the items of personal property found in the building, when it was repossessed by the defendant Mid-City, were ever previously in the possession of or were owned by the Building Company, or were subject to the lien of said deed of trust. What has been previously said with reference to the repossession of the building, under the terms of the sublease and amendment, disposes of plaintiff's right to rents and profits from the building. The assignment is overruled.

Error is assigned upon the court's action on September 11, 1939, in overruling the motion of plaintiff for an order upon defendant Mid-City to permit an inspection of the building and its contents and to permit plaintiff to make a list and inventory of all personal property in the building, "so that it (plaintiff) might be in a position to identify equipment, furniture and other property covered by said deed of trust now located in said building." Plaintiff argues that "without permission to inspect the building and its contents, the plaintiff was deprived of a substantial right which constitutes reversible error."

No inspection of the building and of the personal property therein at the time of the trial, or the production of any list of personal property found in the building, at the time it was repossessed by defendant Mid-City, would establish the *ownership* of such property in the Building Company, nor establish that such property was subject to the claimed lien of plaintiff's deed of trust. Plaintiff made no attempt to show that the property left in the building, when it was surrendered to Mid-City, was the property of the Building Company. Plaintiff instituted suit within the year following the time Mid-City repossessed the building, but plaintiff claimed no spe-

cifically described personal property as subject to its lien. The evidence indicated the building had been occupied by many ·tenants between December, 1933 and the date of the trial, including Warner Brothers and Fanchon and Marco. After the lapse of years and without satisfactory proof that any personal property, ever owned by the Building Company, was in the building,· plaintiff on January 25, 1939, sought permission to inspect the building. In view of the lapse of time, and the absence of satisfactory .evidence that the personal property left in the building was owned by the Building Company, the court did not˜ abuse its discretion in refusing the inspection, and in refusing to require production of the list or inventory of the personal property found in the .building. [State ex rel. Schlueter Mfg. Co. v. Beck, 337 Mo. 839, 85 S. W. (2d) 1026, 1033-1034.]

 Error is assigned on the amount allowed as interest. Plaintiff says it is undisputed that the interest computed to the date of the decree was $52,912.78. No one disputes plaintiff's statement. One of plaintiff's witnesses in possession of the books showing all credits, calculated the amount of interest to April 8, 1940, and testified that $51,456.12 was then due. These books were not offered in evidence. The court in its decree, entered June 17, 1940, allowed interest in the amount of $50,417.24. The decree should have included all accrued interest to the date of the decree and plaintiff is entitled to have the judgment include such amount of interest as against defendants, other than Mid-City.

The judgment is affirmed as to defendant, Mid-City Realty Company, but reversed and remanded as to the other defendants with directions to ascertain and enter judgment against said defendants for the correct amount of principal and interest due plaintiff on the notes. *Hyde* and *Bradley, CC.*, concur.

PER CURIAM:—The foregoing opinion by DALTON, C., is adopted as the opinion of the court. All the judges concur.