WILLIAM B. JENKINS, THERESA A. JENKINS and LOUISE JENKINS, Appellants, v. JOHN TAYLOR DRY GOODS COMPANY.—No. 38610.—179 S. W. (2d) 54.

Division Two, January 3, 1944.

Rehearing Denied, April 3, 1944.

*Adams, Adams & Adams* for appellants.

*Grant I. Rosenzweig* and *Harding, Murphy & Tucker* for respondent.

662

■ BARRETT, C.—This cause originated when the inheritors of Andrew Paul Jenkins instituted an action to recover one month's rent, $833.33, from his original lessee, John Taylor Dry Goods Company, under a ninety-nine year lease. To the suit on the lease for the April 1942 rent the John Taylor Dry Goods Company answered that all obligations due by it under the lease had been fully discharged and paid and, after pleading the terms of the lease, set forth the circumstances upon which it relied as demonstrating that it had completely fulfilled its obligations to Andrew Paul Jenkins and his heirs under the lease. In addition John Taylor Dry Goods Company, by counterclaim and cross petition, set up that there were 790 more months (66 years) in the term of the lease sued upon and that despite the fact of its having fulfilled its obligations under the lease the inheritors of the leasehold were threatening suit for each month's rent as it came due and an injunction restraining the numerous threatened suits was asked. John Taylor Dry Goods Company also asked for a declaratory judgment as to the future rights, status and obligations of the parties under the lease. The cause was tried as an equity suit. The trial court found against the owners of the leasehold on their claim for rent and enjoined them from instituting further suits for rent. In addition the court declared that John Taylor Dry Goods Company had met and complied with the terms and conditions of the lease entitling it to be released of further duties or obligations to pay rent.

In 1909 John Taylor Dry Goods Company was apprehensive of encountering some difficulty in renewing its lease on the property on Main Street at Tenth and Eleventh Streets. Also Mr. John Taylor was of the opinion that the future downtown business district of Kansas City lay in the direction of Thirteenth Street and Grand Avenue. In view of these circumstances six lots at Thirteenth Street and Grand Avenue were purchased outright or leased for long terms in contemplation of moving the business of the company to a new location.

On March 1, 1909 the Jenkins lot was leased for a term of ninety-nine years—to the last day of February 2008—at an annual rental of $10,000.00, payable in monthly installments of $833.33. At the end of the term there was an option to purchase under ▮▮▮ certain conditions. In the lease the company purchased the four-story brick building then on the lot for $40,000.00 and promised, within ten years, to erect new improvements at a cost of not less than $40,000.00. As a tenant the company agreed to maintain the improvements, pay taxes and charges and keep the premises insured. The lease contained clauses (to be discussed later) with reference to assignment, default and forfeiture.

The subsequent history of the lease and the succession of events culminating in this controversy are set forth in the two following paragraphs:

After the lease was executed the company did not change its business location. The principal business district did not move toward Thirteenth Street and Grand Avenue and, within a short time, it became apparent that the course of events contemplated and inducing the procuring of the lease would not likely transpire. The lease became onerous and Mr. Taylor's brothers and business associates who were never wholly of his views as to the future became dissatisfied with the lease and its burdens as an obligation of the company. But, whatever the underlying causes or reasons may have been, on March 18, 1913 John Taylor Dry Goods Company, in consideration of one dollar, assigned the lease to Mr. Taylor personally and he assumed all future obligations under the lease. By 1917 the section of the lease as to improvements had not been complied with and Andrew Paul Jenkins with his wife, the John Taylor Dry Goods Company and Mr. Taylor entered into an agreement extending the time for compliance five years or until the termination of the war. The extension agreement recited that it was not to operate as a release of any previously existing obligation of the company or of Mr. Taylor to Jenkins. In 1917 Mr. Taylor and his wife leased the remaining ninety years of the term to Mr. Robinson who agreed to erect a building on all of the lots, including the Jenkins lot, at a cost of not less than $250,000.00. Robinson, in turn, assigned the lease to White and White assigned to the Grande Building Company. During this period of time the four-story brick building was razed and construction of the thirteen-story $250,000.00 building was begun but after a basement and the concrete and steel skeleton of the building reached three stories the project was abandoned. In 1928 White and the Grande Building Company reassigned the lease to Robinson and Robinson, in turn, assigned the lease to Mr. Taylor's widow and heirs. By 1931 both Mr. Taylor and Mr. Jenkins were dead and the requirements as to improvements had not been met and in that year Mrs. Jenkins and her family, the inheritors of Mr. Jenkins,

granted the company until 1934 in which to comply with the lease as well as pay certain taxes then in arrears and certain mechanics' liens. This extension also provided that it was not to release the company or its assigns from any previously existing obligations under the original lease. Subsequently the three-story concrete and steel skeleton was removed. In 1941 and prior to April 1942 a new one-story building with basement, costing in excess of $40,000.00, was constructed on the Jenkins lot by Mr. Taylor's heirs and successors. On April 28, 1942, the heirs of John Taylor assigned the lease to Benjamin F. Broyles, paying him $500.00 to accept the assignment, the obligations of the lease and possession of the premises. Mr. Broyles was not responsible financially and had neither the ability nor the intention of carrying out the rent obligations of the lease. After this last assignment the John Taylor Dry Goods Company and all the heirs of John Taylor furnished the widow and heirs of Andrew Paul Jenkins certified copies of the official records of all instruments effecting assignments and transfers of the leasehold and no further rent was paid.

Up to April 1942 the annual rental of $10,000.00 had been paid. Several times, three or four (in 1932 and 1933) the rent was in arrears and each time suit was instituted against John Taylor Dry Goods Company for the rent. Each time, after the suits, the payment of rent was resumed. Throughout the years the monthly rent was deposited in the First National Bank to the credit of Mr. Jenkins and after his death to the credit of his successors. Prior to 1913 the rent was paid by the John Taylor Dry Goods Company but after the assignment to Mr. Taylor in 1913, the company's evidence shows, the rent was advanced by the company but charged to Mr. Taylor's personal account, after his death to his estate, then to the John Taylor Trust Account and finally to two of the sons as agents and representatives of the Taylor heirs.

On this appeal the Jenkins family contends that the lease contains a special written covenant by which the tenant, John Taylor Dry Goods Company, promised and bound itself to pay the specified rent throughout the whole term of ninety-nine years and that it is obligated for the rent for the whole term, even though the lease has been assigned, because the covenant to pay rent is in addition to all other covenants in the lease. They concede that the lease contains a provision permitting its assignment but contend that the covenant to pay rent is in addition to all other payments required; an express covenant continuing the lessee's and lessor's privity of contract in plain, unambiguous language. They say that the effect of the covenant and the lease is to give the lessor the option to declare a forfeiture for defaults under the lease or to insist upon the payment of rent by the original lessee. In the second place, they contend that even though the lease may be said to permit an assignment and a con-

sequent release of the lessee's obligation to pay rent that the original lessee has never, in fact, made such an assignment as the lease contemplated or performed other obligations imposed upon it by the lease. They say that the lease called for the erection of a $40,000.00 improvement within a specified time, ten years, if it is sought to comply with that part of the lease. Not only was the building not erected in the specified time but that part of the lease was abandoned by the parties by the second extension agreement. Their position as to the building finally erected is that it was built by the Taylor heirs, who are not parties to the lease or this suit, and not by the lessee. Finally, they say that the covenant as to taxes was in default at the time of the assignment to Broyles in 1942.

On the other hand, John Taylor Dry Goods Company contends that the lease contains a clause specifically permitting it to secure its release of all further and future obligations under the lease provided and when it has complied with these specified terms and conditions. It says that after it has complied with those plain and unambiguous provisions of the lease it is not thereafter responsible for the performance of its obligation. The company takes the position that by April 1942 the lease had been assigned, a $40,000.00 building had been constructed on the leased ground, the landlord had been furnished certified copies of all instruments effecting assignments and up to that date none of the obligations imposed by the lease were in default and, therefore, it had fully complied with all the terms and requirements of the lease securing its release of all further liability under the lease.

The numerous incidental and collateral matters pressed cannot be considered or determined in this case. Neither the Taylor heirs nor Broyles are parties to this suit and their rights or obligations under the lease cannot now be determined. The only parties to this cause whose rights and obligations can be adjudicated are Andrew Paul Jenkins' successors, the present owners of the lease and the parties plaintiff, on the one hand and the John Taylor Dry Goods Company, the original lessee and party defendant on the other hand. Furthermore, the decisive problems presented by this appeal are whether, in the first place, this lease does in fact contain a clause by which the lessee may secure its release from this lease and particularly a release from its obligation of the covenant to pay rent and, in the second place, if it does contain such a clause whether the lessee—John Taylor Dry Goods Company—has complied with the provision and is therefore released. Or, to attempt stating the matter differently, the problem is whether the lease shows that the parties to it contracted and contemplated that in the event of an assignment of the lease and performance and compliance with certain conditions the lessee would be relieved of further liability under the lease.

Those who now stand in the place of the landlord and seek to enforce his rights emphasize this provision of the lease:

"*As rent* for the said premises, *the tenant* (in addition to other payments herein required), *agrees to pay to the landlord* or to his order, at such place in Kansas City, Missouri, as the landlord may in writing, from time to time, direct, the sum of Ten Thousand Dollars ($10,000.00), per year *for each and every year throughout the whole of said term*, the same to be paid in monthly installments of Eight Hundred and Thirty-three Dollars and Thirty-three cents ($833.33) each, due upon the first day of each month in advance."

The lessee relies upon and emphasizes this provision of the lease:

"*The tenant may* mortgage, encumber, pledge, *assign, transfer, convey and alien* his interest in and under *this lease* in whole or part, or may sublet under the same. A *transfer or assignment shall release the party making the transfer or assignment from obligations maturing thereafter, but not from obligations maturing theretofore.* No assignment or transfer need be recognized by the landlord so as to release the party making same until the party making same furnishes the ▉ landlord an original, or certified copy of the record of the instrument effecting such assignment or transfer; and the landlord need not recognize any person to whom any assignment or transfer is made until all obligations under the lease in full to the date when such recognition is desired, have been fully paid and performed. Nevertheless (notwithstanding any transfer or assignment from the said John Taylor Dry Goods Company), no assignment or transfer out of said Taylor Company shall release the said Taylor Company from its obligation to erect the improvements costing not less than Forty Thousand Dollars ($40,000.00) as first written in this instrument, or from any other obligation under this lease maturing prior to the erection thereof; but, on the contrary, notwithstanding any assignment or transfer by the Taylor Company prior to the erection of such improvements, the said Taylor Company shall stand obligated as a principal obligor to the landlord for the erection of said improvements and for all obligations maturing prior to such erection."

There isn't much doubt but that the custom of inserting special covenants to pay rent in leases was evolved for the purpose of defeating the practice and obviating the rule permitting lessees to discharge themselves of further liability under a lease merely by assigning it to another, especially an insolvent. 1 Taylor, Landlord & Tenant, Sec. 371. It may be that in the absence of a specific stipulation against assignment and so long as there is nothing more than privity of estate between the landlord and one occupying the relationship of a tenant the lease may be assigned and the assignor relieved of further obligations under the lease as a tenant. Tyler Estate v. Giesler, 74 Mo. App. 543. But, if the lease contains an express covenant to pay rent then the lessee may not escape liability on the

lease merely by assigning it to another. Privity of contract, as contrasted with the more lowly privity of estate, exists and the lessee having covenanted is bound even though he assign and even though the landlord receive and accept rent from the assignee. Whetstone v. McCartney, 32 Mo. App. 430; James v. Barnes, 45 Mo. 590; Buchanan v. Exposition Co., 245 Mo. 337, 149 S. W. 26; Ward v. Krull, 49 Mo. App. 447; Geyer v. Denham (Mo. App.), 231 S. W. 61; 36 A. L. R. 316; Ann. Cas. 1916E, p. 788; 52 L. R. A. (N. S.) 988. However, the fact that the rent clause of a lease is an express covenant does not mean that it is absolutely impossible for a tenant to be relieved of future obligations under the lease. A covenant is a promise, an agreement or a contract (3 Williston, Contracts, Sec. 670; 21 C. J. S., Sec. 1); formerly it was a contract under seal. Holmes, The Common Law, pp. 272-273. And it cannot be denied that the lessee's promise or agreement in this lease to pay rent throughout the whole term is such a covenant. But despite the covenant to pay rent, if the lease contains other promises, especially promises from the lessor based on consideration or mutuality of promises, they must be given as much effect as the covenant to pay rent. All the covenants and clauses of the lease, if they are not inconsistent, must be read together and given effect to the end that the intention of the parties to the lease is thereby determined and effectuated. Bennett, Law of Landlord & Tenant, Sec. 191. The lessee is bound by and must observe his covenant to pay rent so long as that covenant alone is applicable but if the lease also contains an express promise, and sometimes an implied promise, that the lessee may under certain conditions assign the lease or in certain eventualities become relieved or released of his obligations under the lease that covenant must also be recognized and if it has been complied with the lessee is entitled to be discharged of his obligation. 32 Am. Jur., Secs. 356-358, 362; 3 Thompson, Real Property, Sec. 1408; Jones, Landlord & Tenant, Secs. 448-450; Annotation 110 A. L. R. 591.

There is an express provision and promise in this lease that the tenant may assign the lease and when he does such "assignment shall release the party making the transfer or assignment from obligations maturing thereafter, but not from obligations maturing theretofore." The lessee must not be in default as to any obligation "under the lease in full to the date *when such recognition is desired.*" If the lessee does assign the lease, however, it is not relieved of its obligation to erect an improvement of the value of $40,000.00 nor of any other obligation under the lease prior to that time and event but when and after all these provisions have been fulfilled the tenant is specifically released. This covenant as well as the covenant to pay rent and all the covenants of the whole lease may be read together without conflict or contradiction in its terms and without expressed contrariety of purpose on the part of the parties to it. 32 Am. Jur.,

Sec. 127. Privity of contract obtains as to this clause as much as it obtains as to the rent clause. Anything that may be said in this respect of one of these covenants may also be said as to the other covenant. It is argued that because the covenant providing for rent says, parenthetically, "in addition to all other payments herein required" that the obligation to pay rent was not one of the obligations referred to in the previous paragraph permitting an assignment and providing for a release of the tenant's liability. It is said that the clause authorizing the landlord to perform any obligation in default at the expense of the lessee and the clause giving the landlord a lien on any improvements for obligations unperformed demonstrates that the covenant to pay rent was intended to be in addition to all other obligations. But the promise itself is not so limited in express terms and to so read and construe the lease would, in effect, destroy the clause permitting an assignment. Is it reasonable to suppose that the parties contracted for and intended permitting an assignment and release but solely of obligations other than the obligation to pay rent, such as the payment of taxes, insurance and maintenance of the premises? The most substantial payments required by the lease are rent; $330,000.00 rent has been paid in the past thirty-three years and the remainder of the term calls for $660,000.00 in rent.

It is true the original lessee, John Taylor Dry Goods Company, did not pay for the $40,000.00 building erected in 1941 and 1942 and neither were the improvements made contemporaneously with the assignment to John Taylor in 1913. But the lease does not say that the two events must occur contemporaneously or that all the obligations of the lease must be satisfied as of the date of the assignment. The lease says "when such recognition (of the assignment) is desired" there must then be no default in any of the obligations of the lease. Until recognition of the assignment is desired, up to that time, even though there has been an assignment, previously, "nevertheless (notwithstanding any transfer or assignment from the said John Taylor Dry Goods Company) no assignment . . . shall release the said Taylor Company from its obligation to erect the improvements . . . or from any other obligation under this lease maturing prior to the erection thereof; . . . " It cannot be said, however, the provisions providing for the erection of improvements to cost at least $40,000.00 were abandoned by the agreements extending the originally specified ten years in which to build. The agreements themselves do not so provide and the assignment provision specifically provides for the continuance of that obligation even after a transfer of the lease. It is also true that the promise to build was not carried out within the originally specified ten years nor even within any of the extended periods of time. Other obligations of the lease were also in default at various times. The rent was in

arrears, taxes accumulated and mechanics' liens were filed. But after suit, under the lease, by the landlord or by mutual consent the arrearages were made up, the payment of rent was resumed and the obligations of the lease were maintained and observed as the parties had agreed and were bound. Geyer v. Denham (Mo. App.), 231 S. W. 61; Henry v. Excelsior Springs M. W. & B. Co., 277 Mo. 508, 211 S. W. 9; Towle v. Pullen, 238 Fed. 107. When there were defaults by the lessee or those performing the obligations of the lease the landlord did not choose to exercise his option to erect the improvements at the expense of the lessee or forfeit the lease as he had a right to do but instead chose to accept and insist upon the payment of rent and having done so the previous breaches and right to declare a forfeiture were waived and the covenants of the lease continued until they were complied with. Board of Trade Office Bldg. v. Shannon Grain Co., 223 Mo. App. 1199, 21 S. W. (2d) 913; Garnhart v. Finney, 40 Mo. 449; Stoddard v. Sheridan Adams Royalty Syndicate (Mo.), 189 S. W. 634; Frank v. Dodd (Mo. App.), 130 S. W. (2d) 210; 36 C. J., Sec. 822. As we have said, we cannot pass on the rights and liabilities of those who are not parties to this suit but the $40,000.00 improvement erected on the land was shown by the defendant's evidence to have been placed there for the purpose of complying with the terms of the lease and, regardless of who paid for the building, it is on the landlord's land and under the lease belongs to him or is there for his benefit in the event the lease is terminated and as long as it meets the requirements of the lease he is in no position to object to who paid for it, designed it and erected it. Garnhart v. Finney, supra; Wright v. Bircher's Exec., 72 Mo. 179; Mercantile-Commerce Bk. & Tr. Co. v. Mid-City Realty Co., 348 Mo. 1006, 156 S. W. (2d) 730; 32 Am. Jur., Secs. 595, 785; 2 Taylor, Landlord & Tenant, Secs. 544, 553; Jones, Landlord & Tenant, Sec. 374.

As indicated in the beginning, there is really but one decisive question in this case and that is whether the lease shows that the parties contracted and contemplated that in the event of an assignment of the lease and the performance of certain conditions the lessee was to be relieved of further liability under the lease. What we have already said indicates that the lease does contain such a provision and that there has been substantial compliance with the lease entitling the defendant-lessee to the judgment entered. There are several cases from other jurisdictions (most of which are not cited by counsel) which fully discuss and indicate the solution of the problems presented by this appeal. The express contract of the parties determines the lessee's liability for rent throughout the term and after an assignment—if he covenants to pay rent and there is no clause in the lease excusing him in the event of an assignment or otherwise he is bound to pay rent. Gholson v. Savin, 137 Ohio St. 551, 31 N. E. (2d) 858,

139 A. L. R. 75; De Lano v. Tennent, 138 Wash. 39, 244 Pac. 273, 45 A. L. R. 766; National Bank of Commerce of Seattle v. Dunn, 194 Wash. 472, 78 Pac. (2d) 535. The landlord may stipulate against an assignment or he may permit an assignment and specifically stipulate that in doing so the lessee is not to be relieved of his covenant to pay rent. Rector v. Hartford Dep. Co., 190 Ill. 380, 60 N. E. 528. But, if he expressly covenants that the lessee may assign the lease after the performance of certain obligations and promises that the assignment "shall release the party making the transfer or assignment from obligations maturing thereafter" he is bound by that covenant just as the lessee was bound by its covenant to pay rent until it performed all obligations maturing prior to the time it sought recognition of the assignment. Dominguez Estate Co. v. Ruddock, 51 Cal. App. (2d) 104, 124 Pac. (2d) 67; Mayer v. Dwiggins, 114 Neb. 184, 206 N. W. 744.

In addition to the cases cited in the preceding paragraph the three leading cases are Alexander v. Theatre Realty Corp., 253 Ky. 674, 70 S. W. (2d) 380; 1165 Fifth Avenue Corp. v. Alger, 288 N. Y. 67, 41 N. E. (2d) 461 and S. S. Kresge Co. v. Sears, 87 Fed. (2d) 135, 110 A. L. R. 583. The lease is examined for a clause specifically permitting an assignment and a release of future liability under the lease upon the performance of specified conditions and events. The negotiations preceding the execution of the lease may be viewed. The length of the term, the right to renew and any circumstance indicating the intention of the parties may be considered. The most important single circumstance is whether the parties in contracting (as shown by the lease), especially the landlord, relied for his protection in securing performance of the lease and the payment of rent on the solvency of his tenant and his continuous occupancy of the premises or whether he relied for his security on the erection of the contemplated improvements which would enhance the value of his property and become his upon the termination of the lease. In the Kentucky and New York cases the unqualified agreements permitting an assignment and a subsequent release of liability and an obvious reliance upon cash deposits, other security or the improvements were emphasized. And those are the important circumstances here. If the landlord had desired greater security or wished for longer occupancy by his tenant he could have stipulated for a more expensive building or against a release. On the contrary, he has expressly permitted an assignment and promised a release when a $40,000.00 building has been constructed and all obligations maturing prior to the construction are not in default. In the Kresge case the lease did not provide for a release and could not be assigned except with the consent of the landlord and in no event until certain onerous conditions had been complied with. The tenant complied with the conditions and relied upon an implied release. The court examined and discussed the circumstances we have mentioned and held

that it was not intended, impliedly or otherwise, that the tenant should be released from his covenant to pay rent even though it had constructed an $800,000.00 building. But even so one of the judges dissented. He emphasized that the lease provided for a renewal and in some events a right to assign. He thought the purpose of the right to assign was to permit the lessee in some eventualities to ·realize on its large investment in the leasehold, which ▮▮▮ it could not do if it could not assign and be released of its covenant to pay rent.

▮▮ It is contended that the covenant to pay taxes was in default when recognition of the assignment was claimed in April 1942. The state and county taxes for 1942 had been assessed in 1941 and the city taxes had been assessed as of January 1942. The appellant quotes from that part of the lease in which the tenant agrees to pay ''all lawful taxes . . . charged, levied or assessed'' during the term and says that the obligation to pay taxes had not been discharged. The appellants' argument would apply and the covenant would have been in default if the only facts and circumstances were those stressed by the appellants. Waterman v. Harkness, 2 Mo. App. 494; Strohmeyer v. Zeppenfeld, 28 Mo. App. 268. But, as the trial court found and observed, the second clause of the tax sentence also provides that ''said taxes•. . . be paid when and as the same fall due and before they become delinquent.'' All taxes due and payable before they became delinquent had been paid prior to May 1, 1942. On that date there were no delinquent taxes and this lease does not contemplate the lessee's payment of taxes after the termination of the tenancy by assignment any more than it contemplates continued, liability for other obligations under the lease which mature after that date, the termination of the lease between the landlord and the tenant. And note the difference in ''assessed,'' ''levied'' and payment of taxes ''before they become delinquent.'' Knight v. Orchard, 92 Mo. App. 466; Annotations 97 A. L. R. 931; L. R. A. 1915A, p. 334.

It is our view that this lease contains a clause by which the parties to it contracted that the lessee might assign the lease and upon compliance with certain conditions became released of further liability under the lease—those conditions have been met and the John Taylor Dry Goods Company is·discharged of future obligations under the lease.

The judgment, therefore, is affirmed. *Westhues* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by BARRETT, C., is adopted as the opinion of the court. All the judges concur.