### FIRST NAT. BANK OF KANSAS CITY v. NEE.

### No. 4510.

United States District Court
W. D. Missouri, W. D.

Aug. 19, 1949.

John H. McEvers, Reece A. Gardner and G. Lee Burns (of Stinson, Mag, Thomson, McEvers & Fizzell), Kansas City, Mo., for plaintiff.

Theron Lamar Caudle, Asst. Atty. Gen., Andrew D. Sharpe, John W. Fisher, Sp. Asst. to Atty. Gen., Sam M. Wear, U. S. Atty., Sam O. Hargus, Asst. Dist. Atty., Kansas City, Mo., for defendant.

REEVES, Chief Judge.

The only question for decision in this case is whether the plaintiff, as lessor's trustee, was entitled to claim credit for depreciation on certain improvements made and used by the lessee or assigns on a leasehold estate for the calendar years 1940-1941. The property involved is located at 40th and Main Streets in Kansas City, Missouri. The plaintiff sought recovery in the sums of $217.98 for the year 1940 and $624.55 for the year 1941.

The right of recovery depends upon a proper construction of a lease of said property dated July 31, 1934 effective September 1, 1934, for a period of 99 years. The lease provided for the razing and demolishing of certain buildings then on the property and for the erection of a new building in accordance with specifications of the lease. The lease provided in like manner for the demolition and removal of the new improvements in the course of the lease, if needful, and for the construction or erection of other buildings in lieu thereof. Note this language: "The lessee shall have the right to demolish and remove, in whole or in part, any building or improvements *now* or *hereafter erected on the leased premises, only for the purpose of remodeling, altering and/or repairing the same so as to be fireproof and as valuable as the building or buildings to be constructed by the lessee as herein provided, or to replace same with new fireproof buildings and improvements of value at least as great as the buildings and improvements to be forthwith constructed herein provided for."* (Emphasis mine.)

Sundry provisions were incorporated in the lease for the mutual protection of the lessor and the lessee. One was to the effect that insurance should be carried, and in the event of loss or destruction of the improvements, proceeds of such insurance

should be available to pay rentals and to reconstruct or replace the building or buildings damaged or destroyed. The lease then contained this significant provision: "In case of forfeiture or termination of this lease on account of any default of the lessee, or at the end of the demised term of Ninety-nine (99) years, all buildings and improvements then on said premises, without compensation to the lessee, *shall pass to and become the property of lessor, free of all liens and incumbrances.*" (Emphasis mine).

And, again, it was provided by Article XIX: "At the end of the term of this lease, lessee and the tenants and subtenants under lessee will surrender possession of the demised premises and *all buildings and improvements thereon to lessor, of at least the value and maintained as herein provided for and free of and from any claims thereto by the lessee.*" (Emphasis mine).

There is no controversy but that the plaintiff is clothed with full power and authority to bring this suit to recover what it claims to be over-payment because of failure to allow depreciation for the calendar years named.

Pursuant to the terms of the lease, the lessee or its assigns promptly began the construction of a building on said premises in exact conformity to the specifications of the lease and of a value not less than that required therein, namely, to be at a contractor's cost of at least $50,000. Prior to the lease it is agreed that the property had an undepreciated cost to the lessor of $105,076.67, and the evidence at the trial indicated that at the date of lessor's death the land then had a value of $92,316, with improvements valued at $158,765, and that the lessor, at the date of her death, had a market value as to her interest in the sum of $125,000.

If, therefore, the devisee of the lessor (or her executor who had taken charge of the real estate because of her debts) was entitled to claim a present interest in the improvements, especially in the building erected thereon, then plaintiff would be entitled to recover for depreciation on said improvement and for which deprecia-

tion the Collector has refused to give credit. As suggested, a proper decision depends upon the terms of the lease as well as to applicable principles of law.

■ 1. Section 3439, R.S.Mo.1939, Mo. R.S.A., construes the term "'real estate'" as follows: "The term 'real estate,' as used herein, shall be construed as coextensive in meaning with lands, tenements and hereditaments, and *as embracing all chattels real.*" (Emphasis mine.)

This statute did not change the common law rule that leasehold estates are personal property. It was so held in Orchard v. Wright-Dalton-Bell-Anchor Store Co., 225 Mo. 414, 125 S.W. 486, loc. cit. 497, 499, and 500, 20 Ann.Cas. 1072; also Springfield Southwestern R. Co. v. Schweitzer, 246 Mo. 122, 151 S.W. 128, loc. cit. 131.

■ It would follow from the above that all property strictly embraced within the leasehold would be "chattels real" and would belong to the lessee.

■ 2. Under the lease the lessee was authorized to demolish buildings or improvements situated on said property at the time the lease was executed and to erect other buildings according to specifications in lieu thereof. The lessee was then empowered to alter or replace in the course of the term the new improvements thus erected and to erect in lieu thereof other new buildings which were just as good and substantial and to maintain them to the end of the lease. It was agreed that the life of the new building erected by the lessee or its assigns or sub-lessee, had a useful life of only 45 years. The provisions of the lease were such that it became the duty of the lessee's tenants or subtenants to erect and maintain new buildings or improvements to the end of the lease, just as good and substantial as the one originally placed. Clearly these improvements belong to the leasehold estate and continued at all times as "chattels real" and in no way were subject to immediate ownership or interest of the lessor or the owner of the fee save only insofar as it would reflect advantageously upon the value of such fee. As indicated by the defendant, this was an economic value, only in the way of security. More-

over, it was specifically provided by the lease that only in case of forfeiture or at the expiry of the lease would "all buildings and improvements then on said premises * * * pass to and become the property of lessor, free of all liens and incumbrances." This meant that by specific contract the title to the improvements was vested in the lessee or its assigns and did not become the property of the lessor, her devisees, or assigns, or others, until the termination or forfeiture of the lease.

The plaintiff, as trustee of said property, and clothed with the right to maintain this suit, could not claim credit for depreciation on behalf of the lessor.

3. Able counsel for plaintiff were of the opinion that the case of Mercantile-Commerce Bank & Trust Co. v. Mid-City Realty Co., 348 Mo. 1006, loc. cit. 1019, 156 S.W.2d 730, 736, was in point. The court said in matters not apposite here: "The fact that the lease expressly provided that the building should 'belong to said party of the first part herein (Bauman) at the end of said term of ninety-nine years herein provided for, or the termination of this lease for any cause whatever,' *did not exclude the lessor's interest in the building the instant it was erected in compliance with the terms of the lease, or his right to require its maintenance upon, and prevent its removal from, the described premises."* (Emphasis mine.)

The court then significantly said: "Any attempt to transfer the building separate and apart from the ground upon which it stood was subject to prior instruments of record affecting the ownership of the building. *Plaintiff's rights were and are subject to such instruments."* (Emphasis mine.)

That is the precise situation here. The plaintiff's rights in this case were and are subject to the lease hereinbefore mentioned, and from which quotations have been made.

The case of Willing v. Chicago Auditorium Ass'n, 277 U.S. 274, loc. cit. 285-286, 48 S.Ct. 507, loc. cit. 508, 72 L.Ed. 880 is not out of harmony with this viewpoint. The court said: "There is no provision in the leases which in terms gives the association the right to tear down this building and erect another in its place. *It may be that the building, as and when constructed, became, and now is, property of the lessors."* (Emphasis mine.)

Then followed this language: "The leases contain certain provisions which may be construed as denying, by implication, any right to tear down the building even to replace it by a better one."

It is to be noted how differently from the above the lease in the case at bar was drawn.

Nor does the case of Kutter v. Smith, 2 Wall. 491, loc. cit. 499, 69 U.S. 491, loc. cit. 499, 17 L.Ed. 830 run counter to the conclusions here reached. Note the language: "But we cannot concede that plaintiff or his assignor had at any time the legal title to the building as distinct from the lot. The well-settled rule is, that such erections as this become a part of the land as each stone and brick are added to the structure. The only exceptions to this rule are the class of fixtures already adverted to, *and such rights as may grow out of express contract. The contract before us was not intended to change this rule."* (Emphasis mine.)

Neither does the case of Bueltermann v. United States, 8 Cir., 155 F.2d 597, aid the plaintiff. In that case, at the expiry of the lease the government claimed that the devisees of the lessor profited greatly from the improvements turned over to them. The court sharply held that there was no value in such improvements above that in the property received in the devise. In referring to the case of Helvering v. Brunn, 309 U.S. 461, 60 S.Ct. 631, 84 L.Ed. 864, the court said [155 F.2d 599]: " * * * the lessor upon a termination of the lease, received income to the extent of the gain realized when, on the termination of the lease, he 'received back his land with a new building on it, which added an ascertainable amount to its value.' "

By analogy, the plaintiff is not helped by these decisions, but, on the contrary, they support the defendant's contention.

4. It is contended by the plaintiff that the useful life of the structure erected

by the lessee is 45 years. It must be assumed that, conformable to the lease agreements, the lessee will erect (when the useful life of the present structure ends) another building in lieu thereof. The plaintiff and its predecessors could not have sustained loss or depreciation for the reason that it is made the duty of the lessee under the lease contract to maintain the values of the property equal to those as of the date when the lease was executed. Under the lease the lessor, the devisees or trustees, would be entitled to receive, at the end of the lease, the property in as good condition as when it was leased. The lease itself forbids depreciation that would adversely affect the lessor.

Upon reason and authority the plaintiff is not entitled to recover and judgment should be rendered for the defendant. All of the requested findings of fact with statement of conclusions of law by defendant are given and filed herewith. The findings of fact requested by plaintiff from 1 to 27 inclusive are given. The requested finding of fact No. 28 made by plaintiff is refused. All the statements of conclusions of law requested by the plaintiff are refused; and the same are filed herewith.