**UNITED STATES of America, Plaintiff,**

v.

**MANSION HOUSE CENTER REDEVELOPMENT COMPANY, et al., Defendants.**

**Nos. 76–20C–(1), 79–616C(1) to 79–618C(1).**

United States District Court, E.D. Missouri, E.D.

Dec. 24, 1987.

Donald F. Flint, Chief Counsel, Dept. of HUD, St. Louis, Mo., J. Christopher Kohn and James G. Bruen, Jr., Atty., Civil Div., U.S. Dept. of Justice, Washington, D.C., Joseph B. Moore, Asst. U.S. Atty., St. Louis, Mo., for plaintiff.

Richard S. Bender, David V. Capes, Gene M. Zafft, Merle L. Silverstein, Rosenblum, Goldenhersh, Silverstein & Zafft, John Michael Clear, Michael E. Kohn, Bryan, Cave, McPheeters & McRoberts, Lawrence Sanders, Linclay Corp., St. Louis, Mo., Robert B. Chatz, Arvey, Hodes, Costello & Burman, Chicago, Ill., Lloyd A. Palans, Gallop, Johnson & Neuman, St. Louis, Mo., for defendants.

## MEMORANDUM

NANGLE, Chief Judge.

### Introduction

The Mansion House litigation is now before the Court on plaintiff United States of America's Motion for Supplemental Order and on defendants Mansion House Center Redevelopment Company, et al.'s Motion to Dismiss Plaintiff's Motion for Supplemental Order for Lack of Jurisdiction.

In 1979, plaintiff filed the three foreclosure cases, Numbers 79–616C(1), 79–617C(1), and 79–618C(1), against defendants. On December 2, 1985, pursuant to an Order and a Memorandum issued that day, this Court entered judgment in plaintiff's favor in each of the three foreclosure cases and ordered a foreclosure sale.[1] On December 6, 1985, this Court stayed its order of foreclosure pending defendants' appeal. On July 17, 1986, the Eighth Circuit Court of Appeals affirmed this Court's judgment in full. *United States v. Mansion House Center Redevelopment Company*, 796 F.2d 1039 (8th Cir.1986). On August 18, 1986, the Eighth Circuit denied defendants' petition for rehearing.

In the Court's Order of December 2, 1985, the Court ordered the United States Marshal to sell "all of the realty described in" the three Deeds of Trust which were the subject of the three foreclosure cases. On January 16, 1987, plaintiff filed the instant Motion for Supplemental Order seeking, in substance, an order from this Court directing the United States Marshal to sell, convey, and deliver: (1) the respective leasehold interests of defendants Mansion House Center Redevelopment Company, Mansion House Center North Redevelopment Company, and Mansion House Center South Redevelopment Company in the Center Tower, the North Tower, and the South Tower; (2) all furniture, fixtures, equipment, supplies, vehicles, works of art, and all other chattels and personal property located in or attached to or belonging to the Mansion House Center towers; and (3) the interest of defendants Mansion House Center Redevelopment Company, Mansion House Center North Redevelopment Company, and Mansion House Center South Redevelopment Company in Mansion House Center Land Redevelopment Corporation. Because defendants' leasehold interests in the three towers is part of the "realty" described in the three Deeds of Trust, the first element of plaintiff's requested relief is part of the relief which the Court ordered by ordering the Marshal to sell "all of the realty described in" the three Deeds of Trust. The second element of plaintiff's requested relief (though possibly implied by the Court's sale order) is not specifically within the ambit of the Court's sale order. The third element of plaintiff's requested relief was not within the ambit of and was not contemplated by the Court's sale order. For the purposes of this memorandum, the Court deems the second and third elements of requested relief to be requests for additional relief.

Defendants oppose plaintiff's motion. Defendants contend that, as plaintiff did not obtain the additional two elements of relief in the Court's judgment of December 2, 1985, plaintiff is attempting to alter, amend, modify, and enlarge upon the relief obtained in the December 2, 1985, judgment. Defendants contend that this Court lacks jurisdiction to so alter, amend, modify, or enlarge upon the December 2, 1985, judgment after the Eighth Circuit affirmed that judgment.

### Jurisdiction

Federal Rule of Civil Procedure 60(a) provides in pertinent part:

> Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders.

Fed.R.Civ.P. 60(a). Rule 60(a) permits the correction of errors in judgments, orders, and other parts of the record arising from oversight and omission. *See* 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2854 at 148 (1973).

In *Pattiz v. Schwartz*, 386 F.2d 300 (8th Cir.1968), the Eighth Circuit, speaking through then Circuit Judge Blackmun, approved of the district court's use of Rule 60(a) to effectuate a "correction in the formal record of a gap or error 'arising from oversight or omission,' ..." 386 F.2d at

---

1. On December 5, 1985, this Court, by a Nunc Pro Tunc order, modified a portion of the December 2, 1985, Order in a manner not relevant to the present motions by changing the minimum amount of earnest money to be deposited with the Marshal from $3000/$1000 to $300,000/$100,000.

303. A district court can utilize Rule 60(a) to implement "what was understood, what was intended, what was agreed, and what the court itself had accepted as the resolution of the litigation then pending." *Id.* In *Pattiz v. Schwartz*, "the intent of the parties and, indeed, of the trial court itself, [was] clear." *Id.* Thus, the district court's corrective action " 'result[ed] simply in the record speaking the truth'." 386 F.2d at 303 (quoting the district court at 41 F.R.D. 456, 459 (E.D.Mo.1967)). The Eighth Circuit also noted that Rule 60(a) is not confined to mistakes of the clerk, but also includes mistakes of the court. 386 F.2d at 303.

Rule 60(a) is the appropriate procedural vehicle to correct "mistakes [occurring] between the design of a judgment and its implementation;" to correct "the translation of the original meaning to the judgment." *United States v. Griffin*, 782 F.2d 1393, 1396 (7th Cir.1986). Rule 60(a) may be used to correct drafting errors, to make the judgment carry out the intent of the court. *Charles v. Daley*, 799 F.2d 343, 347 (7th Cir.1986). "Rule 60(a) finds application where the record makes apparent that the court intended one thing but by merely clerical mistake did another. Such a mistake must not be one of judgment or even misidentification, but merely of recitation...." *Dura–Wood Treating Co., Division of Roy O. Martin Lumber Co. v. Century Forest Industries, Inc.*, 694 F.2d 112, 114 (5th Cir.1982). Rule 60(a) may be used to correct the failure to memorialize part of a decision. *Harcon Barge Co., Inc. v. D & G Boat Rentals, Inc.*, 784 F.2d 665, 669 (5th Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 398, 93 L.Ed.2d 351 (1986). "[I]f the intention of the judge to include a particular provision in the judgment was clear, but he neglected to include the provision, [Rule 60(a)] authorizes correction of the judgment." 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2854 at 153. *See Whitemere Development Corp. v. Township of Cherry Hill*, 786 F.2d 185, 187–188 (3rd Cir.1986). *See generally,* 13 A.L.R.Fed. 794.

■ Rule 60(a) may be employed even after the district court's judgment has been affirmed on appeal. "As long as the appellate court [did] not expressly or implicitly rule[ ] on the issue, the district court [does] not transgress[ ] any jurisdictional boundaries by amending after an appeal has been taken." *Panama Processes, S.A. v. Cities Service Co.,* 789 F.2d 991, 994 (2nd Cir. 1986). Thus, this Court has jurisdiction under Rule 60(a) to correct errors in its judgment, order, and memorandum arising from omission or oversight, even though the Court's judgment has been affirmed on appeal, so long as the Court's corrections do not alter or amend anything expressly or implicitly ruled on by the Eighth Circuit. *Id.* and cases cited therein.

■ This Court's power to correct errors of omission and oversight under Rule 60(a) "may be exercised at any time, either on motion or on the court's own initiative." 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2854 at 149 (1973). Yet, prior to 1976, most courts, including the Eighth Circuit,[2] took the position that a district court lacks jurisdiction to entertain a Rule 60 motion after its judgment has been affirmed on appeal, unless the appellate court has first given leave. *See* 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2856 at 157 & n. 68, and § 2873 at 266–270 & n. 23. However, in 1976 in *Standard Oil Co. of California v. United States*, 429 U.S. 17, 97 S.Ct. 31, 50 L.Ed.2d 21 (1976) (per curiam), the Supreme Court held that a district court can entertain a Rule 60(b) motion after its judgment has been affirmed without leave of the appellate court. *Id.* at 19, 97 S.Ct. at 32. *See Gould v. Mutual Life Insurance Co. of New York*, 790 F.2d 769, 773 (9th Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 580, 93 L.Ed.2d 582 (1986). Likewise, a district court can now entertain a Rule 60(a) motion after its judgment has been affirmed without leave of the appellate court. *See Panama Processes, S.A. v. Cities Service Co.,* 789 F.2d 991, 993–995 (2nd Cir.1986).

2. *See Hartman v. Lauchli,* 304 F.2d 431, 432–433 (8th Cir.1962).

Thus, the Court has jurisdiction to entertain plaintiff's Motion for Supplemental Order under Rule 60(a) and may proceed without leave of the Eighth Circuit.

■ At this point, the Court notes that plaintiff is not guilty of laches or any other equitable defenses with respect to this Rule 60(a) motion. This Court stayed its December 2, 1985, Order pending appeal. The Eighth Circuit affirmed on July 17, 1986, and denied rehearing on August 18, 1986. The Eighth Circuit's mandate was filed on August 28, 1986. Plaintiff filed its Motion for Supplemental Order on January 16, 1987, less than five months after the Eighth Circuit's mandate was filed.

### The Mansion House Litigation

On May 23, 1979, plaintiff filed suits against: (1) Mansion House Center Redevelopment Company (a limited partnership) and its general partners (Number 79–616C(1)); (2) Mansion House Center North Redevelopment Company (a limited partnership) and its general partners (Number 79–617C(1)); and (3) Mansion House Center South Redevelopment Company (a limited partnership) and its general partners (Number 79–618C(1)). Each suit involved a Deed of Trust Note and a Deed of Trust executed in 1964, and a Security Agreement executed in 1967. Each Deed of Trust Note was secured by the corresponding Deed of Trust and later by the corresponding Security Agreement. Each Deed of Trust mortgaged the respective defendants' leasehold interests in the land underlying what are now known as the Mansion House Center towers, together with the entirety of the respective defendants' interests in the towers to be constructed on the land and interests in the fixtures to be installed in those towers.[3] That is, by the Deeds of Trust, defendants mortgaged (in addition to their leasehold interests in the land) both their leasehold interests in the towers and fixtures *and* their fee interests, if any, in the towers and fixtures.[4] Each

---

**3.** Each Deed of Trust mortgages the defendant's leasehold estate interest in the parcel of land on which the particular Mansion House Center tower is now located:

"TOGETHER with the privileges and appurtenances to the same belonging, and all of the rents, issues, and profits which may arise or be had therefrom; and together with all building materials and equipment now or hereafter delivered to said premises and intended to be installed therein.

TOGETHER with all buildings and improvements of every kind and description now or hereafter erected or placed thereon, and all fixtures, including but not limited to all gas and electric fixtures, engines, machinery, radiators, heaters, furnaces, heating equipment, steam and hot water boilers, stoves, ranges, elevators and motors, bathtubs, sinks, water closets, basins, pipes, faucets and other plumbing and heating equipment, cabinets, mantels, refrigerating plant and refrigerators, whether mechanical or otherwise cooking apparatus and appurtenances, furniture, shades, awnings, screens, venetian blinds and other furnishings; and

All articles of personal property owned by the party of the first part and now or hereafter attached to or used in and about the buildings or buildings now erected or hereafter erected on the lands herein described which are necessary to the complete and comfortable use and occupancy of such building or buildings for the purposes for which they were or are to be erected, including all goods and chattels and personal property as are ever used or furnished in operating a building or the activities conduct-

ed thereon similar to the one herein described and referred to, and all renewals or replacements thereof or articles in substitution thereafter, whether or not the same are, or shall be attached to said building or buildings in any manner. It is hereby agreed that to the extent permitted by law all of the foregoing property and fixtures are to be deemed and held to be a part of and affixed to the realty."

**4.** When defendants executed the three Deeds of Trust in 1964, the three towers had not yet been constructed. In 1964, defendants owned of record only leasehold estate interests in the land on which the towers were later constructed. Thereafter, defendants used the proceeds of the three Deed of Trust Notes loans to construct the three towers on the land. The fact that defendants own leasehold estates in the land on which defendants constructed the three towers does not mean that defendants own those towers and the fixtures installed therein. Rather, "[a]lterations and improvements made by the tenant ordinarily become the property of the lessor, free from any right of the tenant (except in his capacity as lessee)." *2 Powell on Real Property* ¶ 242[1][b][ii] at p. 372.60 (1986). *See G.W. Van Keppel Co. v. United States,* 321 F.Supp. 1183, 1186 (W.D.Mo.1971). If the tenant erects buildings or installs other permanent improvements upon the premises, including fixtures, then the ownership of these buildings, improvements, and fixtures passes to the lessor, *unless* the lease provides that the tenant owns the buildings which he constructs on the land and/or the

Security Agreement pledged as security certain personal property located in or attached to or belonging to the tower which was later constructed on the land involved in the corresponding Deed of Trust and Deed of Trust Note.[5]

In each suit plaintiff sought: (1) a monetary judgment against defendants for the amounts due and owing under the respective Deed of Trust Notes, and (2) in order to satisfy the Deed of Trust Notes indebtedness and the monetary judgments against defendants, an order and decree that the respective Deeds of Trust on the respective leasehold estates and the respective Security Agreements be foreclosed and that the property subject to those Deeds of Trust and the property subject to and covered by those Security Agreements be sold.

After litigation spanning numerous years and resulting in a number of decisions both from this Court and from the Eighth Circuit Court of Appeals, on August 12, 1985, Numbers 79–616C(1), 79–617C(1), and 79–618C(1) were tried to this Court sitting without a jury. The parties stipulated that plaintiff was no longer seeking monetary judgments against defendants for personal liability on the Deed of Trust Notes. *See* Stipulation No. 60. The parties further stipulated that, unless defendants prevailed on their sole defense, plaintiff was entitled to a separate judgment in each case that

the Deeds of Trust and the Security Agreements be foreclosed and that the realty and property described in those instruments be sold to satisfy the Deed of Trust Notes indebtedness. *See* Stipulation Nos. 57, 59, & 61.

### The December 2, 1985, Memorandum and Order

In the four-page Memorandum decision, the Court noted that the parties had "stipulated to all the necessary facts...." (Memorandum, p. 1). The Court incorporated by reference into the Memorandum the parties' stipulations. The Court only briefly reiterated the facts underlying the Mansion House litigation "for purposes of information and clarity." *Id.* In relevant part, the Court stated:

> The Mansion House Center consists of three 28–story towers in downtown St. Louis, Missouri. The three towers are respectively owned by three separate limited partnerships (the Owner Partnerships), namely Mansion House Center Redevelopment Company (Center Tower), Mansion House Center North Redevelopment Company (North Tower) and Mansion House Center South Redevelopment Company (South Tower). The towers were constructed with proceeds from three mortgage loans made in 1964 to the respective Owner Partnerships.

---

permanent improvements and fixtures which he installs therein. Cunningham, Stoebuck & Whitman, *The Law of Property* § 6.46 at pp. 357–358 (1984); 2 *Powell on Real Property* ¶ 246[1][b][ii] at p. 372.60 (1986). *See First National Bank of Kansas City v. Nee,* 190 F.2d 61, 67–68 (8th Cir.1951); *Century Electric Co. v. Terminal Railroad Association of St. Louis,* 426 S.W.2d 58, 60–61 (Mo.1968); *State v. Vitale,* 411 S.W.2d 174, 177 (Mo.1967); *Mercantile–Commerce Bank & Trust Co. v. Mid–City Realty,* 348 Mo. 1006, 156 S.W.2d 730, 736–737 (1941).

In the instant case, the leases entered into by Mansion House Center Land Redevelopment Corporation, as lessor, and defendants, as lessees, determine what interests defendants possess in the towers and fixtures and thereby what interests in the towers and fixtures defendants mortgaged by the Deeds of Trust. If, under those leases, defendants, as lessees of the land, do not own the towers and fixtures, then defendants only have leasehold rights in the towers and fixtures. Thus, by the Deeds of Trust, defendants would have mortgaged only lease-

hold interests in the towers and fixtures. In contrast, if the leases provide that defendants, as lessees of the land, own the towers and fixtures, then, by the Deeds of Trust, defendants mortgaged the fee interests in the towers and fixtures. *See generally,* 51C *C.J.S., Landlord & Tenant* §§ 44(2) & 50–52 at pp. 125–126 & 151–157 (1968).

5. Each Security Agreement grants plaintiff:
   "a security interest in the following described property and any and all additions, accessions, and substitutions thereto and therefor (hereinafter called the "Collateral"): all stoves, refrigerators, dishwashers and disposals (Westinghouse), and assorted office, pool and lobby furniture, equipment and devices, signs, objects of art, maintenance, cleaning and garden tools"
   located in or attached to or belonging to the three towers constructed on the real estate legally described in the respective Deeds of Trust, i.e., the land on which the three towers are now located.

These loans totaled over $35 million and were insured by HUD. * * * In 1971, ... the notes went into default. The private lenders subsequently assigned the notes, deeds of trust and security agreements to HUD. In return, HUD was required to pay mortgage insurance claims totaling approximately $35.3 million.

 *   *   *   *   *   *

[T]he parties have stipulated ... that as of May, 1979, payments on the mortgage [notes] were not current. * * * [I]n May, 1979, [HUD] filed these three foreclosure actions. The uncontested evidence introduced at trial by the Government indicated that as of August 12, 1985 [6] the amounts due on the mortgages were as follows: North Tower (FHA No. 085–32008) $16,196,724.30; Center Tower (FHA No. 085–32009) $18,159,863.33; and South Tower (FHA No. 085–32010) $18,069,574.47. The parties stipulated that the Government properly declared due and payable, the entire principal sum and accrued interest as provided in each note, deed of trust and security agreement. Finally, the parties stipulated that the United States is entitled to a separate judgment in each of the foreclosure cases, subject to the defendants' defense that HUD should be compelled to settle these cases under the terms contained in the August 18, 1982 settlement agreement, as amended.

Memorandum Decision, December 2, 1985, pp. 1–2.

The Court proceeded to consider defendants' sole defense. (Memorandum, p. 3). The Court "reject[ed] the sole defense asserted by the Owner Partnerships," rendered judgment in plaintiff's favor in each of the three cases, and "direct[ed] that the three towers collectively known as the Mansion House Center be sold according to the terms of the attached Order of this Court." (Memorandum, p. 4). This decision was affirmed on appeal. 796 F.2d 1039.

The Court's attached Order stated:

6. The day of the bench trial.

Pursuant to the memorandum filed herein this day,

IT IS HEREBY ORDERED that a judgment be and is entered in favor of the plaintiff in each of these three causes of action.

The Order further ordered the United States Marshal to sell:

all of the realty described in the Deeds of Trust for FHA No. 085–32008 (North Tower), FHA No. 085–32009 (Center Tower) and FHA No. 085–32010 (South Tower), to the highest bidder for cash.

The Order then set forth the procedures for the Marshal to follow in selling the realty.

### Omissions and Oversights

As the brevity of the Court's Memorandum and Order indicates, and by the Court's incorporation by reference of the parties' stipulations, both the Memorandum and Order were intended to be read in the context of: (1) the three complaints, (2) the preceding decisions of this Court and of the Eighth Circuit in the Mansion House litigation, and, most importantly, (3) the parties' 61 stipulations of fact (some 19 pages). The Court's desire for brevity caused the Court to omit various understood facts and conclusions. Other understood facts and conclusions were apparently omitted due to oversight. The Court notes the following omissions and oversights in the Memorandum and in the Order:

1. The Memorandum fails to state that the respective defendants executed the respective Deed of Trust Notes, Deeds of Trust, and Security Agreements, and fails to state that HUD is the lawful holder of the Notes, Deeds of Trust, and Security Agreements.

2. The Memorandum fails to state that defendants are lessees of the land underlying the Mansion House Center Towers and fails to state that the Deeds of Trust are leasehold mortgages.

3. The Memorandum fails to conclude that the amounts due on the three Deed of Trust Notes were: $18,159,-

863.33 (Center Tower; No. 79–616C(1)), $16,196,724.30 (North Tower; No. 79–617C(1)), and $18,069,574.47 (South Tower; No. 79–618C(1)).

4. The Memorandum fails to conclude that the respective Deeds of Trust and the respective Security Agreements should be foreclosed.

5. The Order fails to order the foreclosure of the respective Deeds of Trust and of the respective Security Agreements.

6. The Order fails to order the sale of the property subject to and covered by the respective Security Agreements, and the Order fails specifically to order the sale of the entirety of defendants' interests in the towers and fixtures mortgaged by the Deeds of Trust.

Most of the information referred to in the omitted facts and conclusions is contained in the parties' stipulations, specifically Stipulations Nos. 22, 23, 28, 34, 35, 40, 46, 47, 52, 56, 58, 59, and 60.

### Sale of Fixtures and Personal Property

■ The second element of plaintiff's requested relief seeks to have the Marshal sell the Mansion House Center towers' fixtures and certain other personal property. The entirety of defendants' interests in the towers and fixtures were mortgaged by the Deeds of Trust. *See supra* footnotes 3 and 4 and accompanying text. The personal property is the property which is subject to and covered by the Security Agreements. *See supra* footnote 5 and accompanying text.

Upon review of the parties' stipulations, the exhibits introduced at trial, the decisions of this Court and of the Eighth Circuit in the Mansion House litigation, and of the Court's December 2, 1985, Memorandum and Order, it is clear to this Court that the Court intended, the parties understood, and defendants stipulated that the Deeds of Trust and the Security Agreements would be foreclosed because defendants had defaulted on the Deed of Trust Notes and because defendants did not prevail on their sole defense. *See* Stipulations Nos. 6, 15, 56, and 59. Further, the Court intended, the parties understood, and defendants stipulated that the entirety of defendants' interests in the property described in and mortgaged by the Deeds of Trust would be sold to satisfy the Deed of Trust Notes indebtedness. *See* Stipulation No. 59. Thus, in addition to having the Marshal sell defendants' leasehold estate interests in the land, plaintiff is and was entitled to have the Marshal sell the entirety of defendants' interests in the towers and fixtures mortgaged by the Deeds of Trust (that is, defendants' leasehold interests in the towers and fixtures *and* defendants' fee interests, if any, in the towers and fixtures). Likewise, the Court intended, the parties understood, and defendants stipulated that plaintiff is and was entitled to have the United States Marshal sell all of the property subject to and covered by the Security Agreements in order to satisfy the Deed of Trust Notes indebtedness. *See* Stipulation No. 59.

In this light, the failure of the Court's December 2, 1985, Memorandum and Order to grant all of the above relief to plaintiff and, specifically, the failure to order the foreclosure of the Deeds of Trust and the Security Agreements, and to order the sale of the entirety of defendants' interests in the fixtures and towers described in and mortgaged by the Deeds of Trust, and to order the sale of the property subject to and covered by the Security Agreements, is a clear error arising from, resulting from, and caused by the Court's omissions and oversights. In this protracted litigation, justice clearly requires that the Court enter an order correcting this error of omission and oversight. This error of omission and oversight may be corrected by the Court pursuant to Fed.R.Civ.P. 60(a).

In order to rectify this error arising from the omissions and oversights in the December 2, 1985, Memorandum, the Court hereby makes the following conclusions and hereby incorporates these conclusions into the December 2, 1985, Memorandum:

1. The Deed of Trust Note in No. 79–616C(1) (FHA No. 085–32009) is secured by the Deed of Trust and by

the Security Agreement which plaintiff seeks to foreclose in that suit. The Deed of Trust Note in No. 79–617C(1) (FHA No. 085–32008) is secured by the Deed of Trust and by the Security Agreement which plaintiff seeks to foreclose in that suit. The Deed of Trust Note in No. 79–618C(1) (FHA No. 085–32010) is secured by the Deed of Trust and by the Security Agreement which plaintiff seeks to foreclose in that suit.

2. As of August 12, 1985, defendants were, and as of this date are, in default on the three Deed of Trust Notes. As of August 12, 1985, defendants owed plaintiff the following amounts: $18,159,863.33 on the Note which is the subject of No. 79–616C(1); $16,196,724.30 on the Note which is the subject of No. 79–617C(1); and $18,069,574.47 on the Note which is the subject of No. 79–618C(1).

3. As defendants are in default on the three Deed of Trust Notes, plaintiff is entitled to foreclosure on the three Deeds of Trust and on the three Security Agreements.

4. In order to satisfy the Deed of Trust Notes indebtedness, plaintiff is entitled to have the United States Marshal sell defendants' leasehold estate interests in the land and the entirety of defendants' interests in the towers and the fixtures therein, as the property described in and mortgaged by the Deeds of Trust, and is entitled to have the United States Marshal sell the property which is subject to and covered by the three Security Agreements.

To the extent that plaintiff in its motion requests the sale of the entirety of defendants' interests in the towers and the fix-

tures therein, as the property described in and mortgaged by the Deeds of Trust, and requests the sale of the personal property which is subject to and covered by the Security Agreements, plaintiff's Motion for Supplemental Order is granted and defendants' motion is denied. Accordingly, pursuant to Fed.R.Civ.P. 60(a), the Court directs the United States Marshal to sell according to the terms of a forthcoming Supplemental Order of the Court: the entirety of defendants' ownership interests under the three leases described in and mortgaged by the three Deeds of Trust, specifically including defendants' leasehold interests in the land, the towers, and the fixtures, and defendants' fee interests, if any, in the towers, and defendants' fee interests, if any, in the fixtures therein, together with the personal property which is subject to and covered by and described in the Security Agreements and which is located in or attached to or belonging to the three towers collectively known as the Mansion House Center.

### Sale of Defendants' Interest in the Mansion House Center Land Redevelopment Corporation

■ At the time they executed the Deeds of Trust leasehold mortgages, defendants did not own the land on which the three towers are now located. Rather, Mansion House Center Land Redevelopment Corporation was the fee owner of the land on which the three towers are now located. On April 21, 1964, Mansion House Center Land Redevelopment Corporation leased the land on which the three towers are now located to defendants.[7] The leases created leasehold estates owned by defendants. After the execution of the leases, Mansion House Center Land Redevelopment Corporation owned the reversionary interest—the fee interest—in the land.[8] *See 2 Powell on Real Property* ¶ 246[1] at p. 372.83 (1986); Cunningham, Stoebuck &

---

7. Mansion House Center Land Redevelopment Corporation leased the north parcel to Mansion House Center North Redevelopment Company. Mansion House Center Land Redevelopment Corporation leased the center parcel to Mansion House Center Redevelopment Company. Mansion House Center Land Redevelopment Corporation leased the south parcel to Mansion House Center South Redevelopment Company.

8. On April 21, 1964, Mansion House Center Land Redevelopment Corporation also: (1) executed Deeds of Trust securing the land only in favor of the General Electric Pension Trust; (2) assigned the three leases to the General Electric Pension Trust, with the consent of the three tenants; and (3) granted options to purchase the fee simple title to the General Electric Pension Trust. Thus, the General Electric Pension Trust

Whitman, *The Law of Property* § 6.12 at 268 (1984). By virtue of a consent judgment, entered on January 10, 1984, in the Circuit Court of Cole County, Missouri, defendants now own all of the beneficial interest in Mansion House Center Land Redevelopment Corporation. Presumably, this interest is represented by shares of stock. Mansion House Center Land Redevelopment Corporation is not a party to this litigation or to any other of the Mansion House litigation in federal court.

The three Deeds of Trust are leasehold mortgages. *See* December 1, 1984, Commitment for Title Insurance Issued by Stewart Title; Schedule A, item 2. Defendants mortgaged only their ownership interests under the three leases. They did not mortgage their beneficial interest in Mansion House Center Land Redevelopment Corporation. They did not mortgage the reversionary interest—the fee—owned by Mansion House Center Land Redevelopment Corporation. Thus, plaintiff has not shown any entitlement to the foreclosure of defendants' interest in Mansion House Center Land Redevelopment Corporation. It is conceivable that in the voluminous records which comprise this "case", there is some support for plaintiff's contention. If so, either or both of the parties should forthwith report same to this Court. Therefore, to the extent plaintiff seeks the sale of defendants' interest in Mansion House Center Land Redevelopment Corporation, plaintiff's Motion for Supplemental Order is denied and defendants' Motion to Dismiss is granted.

### ORDER

Pursuant to the memorandum filed herein this day and pursuant to Fed.R.Civ.P. 60(a),

IT IS HEREBY ORDERED that plaintiff United States of America's motion for supplemental order be and is granted in part and denied in part.

IT IS FURTHER ORDERED that defendants Mansion House Center Redevelop-

ment Company, et al.'s motion to dismiss plaintiff's motion for supplemental order for lack of jurisdiction be and is granted in part and denied in part.

IT IS HEREBY DETERMINED that, as of August 12, 1985, the aggregate Deed of Trust Notes indebtedness owed by defendants to plaintiff was $52,426,162.20.

IT IS FURTHER ORDERED that the three Deeds of Trust referred to in plaintiff's complaints, and recorded on April 21, 1964, in Book 8489 at pages 130, 145, and 162, be and hereby are foreclosed.

IT IS FURTHER ORDERED that the three Security Agreements referred to in plaintiff's complaints be and hereby are foreclosed.

IT IS FURTHER ORDERED that a forthcoming supplemental order of Court shall determine what realty and property the United States Marshal will sell and what procedures the United States Marshal will follow in selling said realty and property.

---

became the beneficial owner of the land underlying the three towers. *See Rodeway Inns of America, Inc. v. Frank,* 541 F.2d 759, 761 n. 1 (8th Cir.1976), *cert. denied,* 430 U.S. 945, 97 S.Ct. 1580, 51 L.Ed.2d 792 (1977). The December 1,

1984, Commitment for Title Insurance Issued by Stewart Title does not indicate any later transfers of the fee interest in the land or any later assignments of the lessor's interests under the three leases.